Is that the right pronunciation? And for the appellant, Ms. Levy. And for the athlete, Ms. Brooks. I think I called you Levy once before, so that's why I was pausing. You may proceed. Good afternoon, Your Honors. My name is Rebecca Levy from the Office of the State Appellate Defender, arguing on behalf of Defendant Vernon Seay. Today I'm going to focus my argument on the first issue that we raised in the briefs and explain why the state failed to prove Seay guilty of obstructing justice beyond reasonable doubt. But, of course, I'd be happy to answer any questions about our alternative argument that the circuit court abused its discretion in imposing a consecutive sentence to protect the public. The state charged Seay with obstructing justice in that he, with the intent to obstruct Robert Derrickson's prosecution, knowingly furnished false information to Officer Bob Gilson in that Seay related to Gilson that he was not with Derrickson at any time on March 8, 2010, which is the night that Derrickson committed the burglary. In order to prove its case, the state had to show that Seay actually impeded Derrickson's burglary prosecution, and the state didn't prove that here. Derrickson confessed to committing the burglary. He confessed to Officer Gilson, and he confessed to Officer Gilson before Gilson interviewed Seay and before Seay told Gilson that he wasn't with Derrickson on the night of the burglary. Before Gilson even spoke to Seay, he already knew from Derrickson that Derrickson had committed the burglary, and Seay's false information that he wasn't with Derrickson could not have, and it did not, impede Derrickson's prosecution in any way. Seay's false information did not make Derrickson's prosecution more difficult, and any risk that Derrickson's prosecution would be compromised by Seay's false information was nonexistent. This is particularly the case where Seay didn't tell Gilson that he and Derrickson were elsewhere. He didn't say that Derrickson also wasn't at the burglarized house, that the two of them were at a bar somewhere else or, for example, anywhere else together. Seay just said he wasn't there. He didn't say that Derrickson wasn't at the burglarized house. Did the jury find him guilty of obstructing his own prosecution under the evidence that was presented? Well, the jury found him not guilty. I know they didn't. My question to you was, based on the evidence that was presented, could they have? Well, Seay testified that he had no intent to obstruct his own prosecution, so from that evidence… What if they disbelieved him? They didn't. We know they didn't. Right, but if they disbelieved him, maybe they found him guilty of obstructing his own prosecution, but there's no evidence he in any way intended or actually did obstruct Derrickson's prosecution. You're not giving anything away by possibly conceding this. I understand that, but I would still think that him saying he wasn't there for three hours, when there's no evidence that he was in the house at all or burglarized it, really did impede his own prosecution in any material way. There's no actual impediment, even at his own prosecution, especially when they didn't prosecute him for burglary. Didn't he provide alibi witnesses that didn't turn out to be alibi witnesses? He said he was at home, and the people he lived with said that they'd gone to bed, and he wasn't there when they'd gone to bed. And then he said he was with another, I believe it was an ex-girlfriend, and she actually provided information that confirmed that he was with the other guy. He did, in the end, give police information that helped them. Let's assume for the moment that I didn't really have the intent, but I stuck around and drove him, or whatever, let's say that. He'd probably have to be present at the scene to be guilty by some form of accountability or common design, or I got roped into it. So by saying he wasn't even there, which ends up being, we think, untrue, isn't he obstructing his own prosecution? This isn't a trap, because he's already been found not guilty of that. I guess it depends on the definition of how your honors or any court wants to define materially impede, because that's required. What's a material impediment, him denying being there for a few hours, and then admitting that he was there? I don't know that that's a material impediment to his own prosecution. The interview was a little under three hours. It's just a short time frame that wouldn't have really impacted the state's prosecution of him for burglary, if they were going to prosecute him for burglary. The state takes issue with our argument that it must prove that Say actually materially impeded Derrickson's prosecution, and it contends that Say is guilty of obstructing justice just by merely uttering the false statements. But in People v. Comage and People v. Baskerville, the Illinois Supreme Court held that in order to prove obstruction, the state must show that the defendant's conduct actually caused material impediment to what the defendant is charged with obstructing. In Comage, the defendant was alleged to have obstructed justice by concealing physical evidence, and here, Say was alleged to have obstructed justice by furnishing false information. But it would create an anomaly to hold that a defendant who intends to hinder his own prosecution by concealing physical evidence, but is unsuccessful in concealing it, can't be convicted of obstructing justice. But a defendant who the state alleges intends to hinder someone else's prosecution by furnishing false information, and is unsuccessful in doing that, can be convicted of the same offense. And later, in People v. Baskerville, the court made that clear when it applied the material impediment language to a factual scenario where a defendant was alleged to have obstructed a peace officer by providing false information. And the Illinois Supreme Court specifically held, in Baskerville, that in order for a person to be guilty of obstructing by furnishing false information, or by furnishing a false statement, the false statement must actually impede an act the officer was authorized to perform. The court stated that the false statement only has legal significance if the false information actually impeded an act. And also in Baskerville, the court noted that the obstructing justice and the obstructing a peace officer statute, the two statutes should be read harmoniously. And there would not be a harmonious reading of both statutes if furnishing false information has a different definition under each one, which the second district appellate court noted in People v. Taylor. The thrust of your argument is that the police already knew and had evidence of the offense. And nothing the defendant told them actually hindered their prosecution of the other defendant, the co-defendant. And that anything he said was probably designed to insulate himself, that is, when he was lying. He was insulating himself, but he wasn't trying to insulate the other perpetrator of the offense. He wasn't trying to obstruct. Correct. I don't believe he was trying to, he didn't intend to obstruct the other person's prosecution, nor did he with the information that he gave the police. The lack of information, he just, nothing he said was untrue about Derrickson. He just said that he wasn't with him. As I said earlier, for example, if he had said that he and Derrickson were somewhere else, he didn't mislead the police about where Derrickson's whereabouts the night of the burglary. And again, the police already knew from Derrickson himself that he committed the burglary, because he had confessed the day before. Similar to how the contraband in People vs. Commerce was never actually concealed by the defendant because the police saw him throw it, Say here never really actually furnished false information where the officer knew that it was false. For all the reasons I've already mentioned, that he had already confessed, and Say didn't provide false information about Derrickson or where he was that night. In summary, nothing that Say told the police had any impact at all on Derrickson's prosecution, let alone did Say actually impede it, or slow the progress of it, or interfere with it in any way. Because of this, the state didn't prove him guilty of obstructing justice beyond a reasonable doubt, and we're asking your honors to reverse his conviction. Any questions? We'll hear from you on rebuttal. Thanks. Good afternoon, your honors. I'm Allison Paige Brooks, appearing on behalf of the People. May it please the court and counsel. The defendant relies on the case of Taylor from the appellate court, a case that would be considered persuasive authority because it is not binding on this court, in terms of what elements are necessary to be proved in order to convict the defendant of obstructing justice who had furnished false information to the police with intent to obstruct the prosecution of a person. Taylor, in applying what it says is the same standards used in the Camage and Baskerville cases, has added a third element to the crime, whereas the person is supposed to obstruct justice when number one, furnishing false information, and number two, having the intent to obstruct the prosecution of a person, adding the third element of actually impeding or hindering the obstructing the prosecution of the person. That is an additional element not contained in the plain language of the statute. The reason why Taylor erroneously reached that conclusion is because Baskerville and Camage did not have this same statutory language at issue. Baskerville was a different offense. The defendant says it was the same factual scenario, but this is what makes all the difference. Baskerville was not obstructing justice, it was obstructing a peace officer. Obstructing a peace officer under section 31-1 has an element of knowingly, quote, obstructs, end quote. The peace officer obstructs means that there has to be an imposition of an obstacle impeding or hindering the peace officer's performance of authorized duties. So the penalty is tied to a defendant who obstructs the officer requiring actual obstruction, thereby you can't be guilty without actually obstructing. That's a different crime, whereas Baskerville also mentions that sections 31-4 target a specific subset of obstructive conduct. I'll get to that later when dealing with the section of obstructing justice. Camage is actually an obstructing justice case, however it dealt with a different subsection. The reason why Camage's conviction for concealing physical evidence, obstructing evidence, obstructing justice by concealing physical evidence was reversed is because he did not, quote, conceal, end quote, the crack pipe. However, if he had been charged with obstructing a peace officer, trying to get rid of the evidence, even though the police might be able to find it because they saw him throw it, it would hinder prosecution if the police couldn't find it, or if it was his intent that he didn't want the police to find it. Would he have been guilty then? Well, he wasn't charged. I know he wasn't charged. I understand that, but I'm just getting to the point of the difference in the statutes is the charge of obstructing a peace officer does not contain the intent to obstruct prosecution element. It requires knowing obstruction. So if I throw the pipe over the fence as I'm running down the alley, am I guilty of an offense for doing so? It depends on the mental state. The mental state is I don't want you to find me with the crack pipe. Right, but the jury has to find beyond a reasonable doubt that the state approved beyond a reasonable doubt that the defendant intended to obstruct the prosecution. That's for convicting of obstructing justice. But obstructing a police officer, am I obstructing a police officer in the performance of his duties by throwing that crack pipe over the fence? And I think that depends on whether it actually obstructs because that's a requirement of the statute. Then there's a requirement that it actually obstructs the officer. There's no gate. I have to climb over the fence. I have to look through the snow. We spend an inordinate number of hours trying to find the crack pipe. But we find it. Is that obstruction of a peace officer? Yes. Well, essentially, they applied the dictionary definition in paragraph 19. Obstructing encompasses physical conduct literally creating an obstacle as well as conduct the effect of which impedes or hinders progress. So, yes, if there is an interference with the officer's progress in recovering the physical evidence, that would be an obstruction, an actual obstruction fitting within the definition of 31-1. But that's because that statute contains an element of obstruction. However, 31-4 is different because it actually defines what is obstructing conduct, what is obstructing justice in terms of furnishing false information, and thereby making furnishing false information a per se actual interference with the administration of justice. And that's the reason why Comage was reversed because the Supreme Court of Illinois found that there was not insufficient proof that Comage actually concealed the crack pipe within the meaning of the statute. And the only reason why they got to that result is because they narrowly construed the term concealed. So if I lie about my whereabouts, even though my whereabouts have absolutely no bearing on whether my co-defendant is going to be prosecuted and going to be convicted since he confessed, I'm guilty of obstruction of justice? It depends. Because that's per se. With the intent. With the intent. Yes, that's the key. Intent is key. Not just furnishing false information, but it's with the intent to obstruct the prosecution of a person. Other than myself? It could be, depending on how it's charged. In this case, it was charged in two different ways. It was charged both for the intent to obstruct the defendant's own prosecution and the intent to obstruct the prosecution of Robert Derrickson. Someone else. How does it obstruct Derrickson if I just say I'm not with him? I didn't see him. I'm not with him. I don't even know him. How does that obstruct his prosecution? Well, it's in terms of what could be reasonably inferred from the evidence, and my recollection is that the defendant knew during the interview that the police had already gotten, essentially, Mr. Derrickson. However, by saying that he was not at all with Derrickson, knowing that confession involved Derrickson's claim that Derrickson was with the defendant the night of the burglary, thereby impacts negatively the veracity of Derrickson's confession that he burglarized the residence with the defendant. So the defendant claiming an airtight alibi, essentially, means that what Derrickson told police about burglarizing his residence with the defendant cannot be true because if the defendant was not there because he has an alibi, he was somewhere else, that would mean that Derrickson lied to police, and that confession is not going to help him get prosecuted for a crime because false confessions do happen for various reasons. And one could be that here the police officer also knew that the car belonged to Derrickson's fiance, who could be a potential suspect for somebody who could have committed the crime. And when the car is stuck at the place being burglarized, they check the registration, they find out who it belongs to, and the fiance claims that she gave the car to Derrickson. Derrickson drove it that night. But the police officer doesn't really know that to be true. That's just what he's heard from a witness. And then Derrickson claims that he was with the defendant, and the defendant says, no, I wasn't with Derrickson because I've got an alibi. Go talk to my roommates, and then go talk to his ex-girlfriend. In those situations, the cop is going to not be confident that he's prosecuting Derrickson is the right thing to do because he's got to go refute that alibi, the wild goose chase that the defendant sends him on, having to go out and talk to two different sets of witnesses, to then finally, fortuitously for the police, the ex-girlfriend Cindy then puts the defendant at the scene of the crime, outside the road, and having to come pick him up the night of the burglary because that's where their car got stuck. So that's why the alibi got refuted because she then is a witness that the police then found that puts Derrickson and the defendant together, then come back to the defendant, and finally admits that he lied. So it is, in fact, a reasonable inference from what the defendant knew at the time of his false statements, that he was also not just intending to obstruct his own prosecution, but intend to obstruct Derrickson's prosecution in the sense that Derrickson put the defendant with him at the same time. So thereby, his alibi undercuts the prosecution of Derrickson, just as it would his own, and the fact that the jury reached a seemingly inconsistent verdict on this evidence should be attributed more to lenity or a compromise-type situation, not the fact that the jury necessarily harbored a reasonable doubt of what the defendant's intent was. And it's notable the defendant doesn't even claim insufficient proof of intent. It stakes his argument on this sort of third element added by Taylor as being unproved when it's not even an element of proof, it wasn't something the jury was instructed about, and it should not be recognized as a law for these reasons. Ms. Brooks, doesn't the Supreme Court in Colmage say, in enacting Section 31-4 of the legislature intended to criminalize behavior that actually interferes with the administration of justice, and then they go on to say, i.e. conduct that obstructs prosecution or defense of any person. So you're saying Taylor added that third point, but the Supreme Court in Colmage says the very same thing. Well, the Supreme Court says in sort of dicta that that was the intent of Section 31-4, but yet that is not what the defendant says here on their page 9. In order to convict a defendant of obstructing justice, the state must prove that his behavior actually interferes, etc., quoting from Colmage. However, the section from Colmage actually says that, in enacting Section 31-4 of the legislature intended, it does not say that in order to get a conviction under Section 31-4, that the state has to prove beyond a reasonable doubt that, and then going along with the quote, that the defendant actually interfered with the administration of justice. They say to criminalize that behavior. They intended to criminalize behavior that actually interferes. But that's what the legislature did when they specified, under a basket bill, recognized that furnishing false information is a subset of obstructive conduct. This is per se definitional. The statute says a person obstructs justice when he furnishes false information with this intent. It's a definition. This legislature has told us what obstructing justice is, and it's per se. It doesn't really have an extra element. And what I'd like to emphasize here also is that, if that were really an additional element, this sort of dicta from Colmage about what the legislature intended, if that were really the case, then also the Supreme Court of Illinois would have had to say is, this element, not contained in the legislative text, but we're going to recognize it as an additional third element to this crime, wasn't met here, so therefore we're going to reverse this conviction. Instead, what they did is they said, we're going to narrowly construe what it means to conceal physical evidence. Here, the state didn't prove that he, quote, concealed physical evidence. Thereby, we reverse this conviction. So, it is a totally separate situation, and this is the reason why the Taylor Court, we respectfully assert, had misapplied Colmage and Baskerville to the situation, which is distinct. The state made the same argument in Taylor, and it did not prevail there, but it should prevail here, Your Honors, and the reason is because Colmage is restricted to this sort of element of what it means to conceal. Now, the defendant says this is an anomaly. If Your Honors go a different way and uphold the conviction, the Senate says you're creating a legal anomaly. That's not true because the distinction in Colmage was important. They rejected the state's construction of concealment because it would have made obstructing justice out of every possessory offense where contraband was not in plain view. That's the reason for the narrow construction there. The defendant hasn't offered a single reason why a similar limitation should be applied to the phrase furnishing false information. Instead, the state cites the dictionary definition of furnishing, said it means to supply or give. There's no need for the false information to be accepted or believed, just like the Wallace case. A bribery statute, the defendant made a similar argument, saying that, well, the crime's actually an attempt, unless the bribe is accepted. Well, actually, that's not true. The Supreme Court of Illinois says the bribery is tendering, according to statute, tenders property with intent to influence. It's a completed offense the moment the property is tendered. Here, the moment that false information is furnished, it's a completed crime. Taylor is incorrect in saying that this should have been charged in Taylor and that this crime, according to the defendant here, should have been charged as an attempt because there's no completed offense without the false information materially impeding the administration justice. That's their position. That's the position of Taylor. But just like the bribery analysis in Wallace, this court should recognize a completed offense. And, of course, Taylor cites some other cases where there were convictions upheld for attempted obstruction of justice. That's irrelevant because an attempt crime can be charged as an attempt, even if it's actually a completed crime. It doesn't have to be an incompleted crime in order to be prosecuted and convicted and upheld as an attempt crime. So the fact that some other previous cases that Taylor cites were involved in attempt convictions does not mean that those were not actually legally completed offenses but just simply punished as attempts. Here there was also Taylor's distinguishable. This is not, as the defendant claims, an insubstantial delay. There's a three-hour interview, multiple trips out to go interview witnesses. This is not simply the situation where the police officer knew the defendant and there was really no extra even a minute or two in delaying the arrest. That was Taylor. Here there is a substantial delay in the prosecution. So even if it were an additional element, it should be considered proof beyond a reasonable doubt. And then, oh, okay, the other thing I'd like to mention is that in Cammage actually says, just before the section that Justice Pope quoted, obstruction of justice is an attempt to interfere with the administration of the court's judicial system or law enforcement agencies. So even in Cammage they recognize that obstruction of justice is actually an attempt type of crime, even though, you know, so it's not a situation where this is not a completed offense where obstruction of justice is defined in a way that completed offenses encompass attempts. So even if this were sort of an attempt in a colloquial sense of the fact that he furnished information that wasn't eventually completely accepted by the state, this is still a completed crime for purposes of the class 4 felony that he received. And so for those reasons, this court should respectfully decline to apply the standards of basketball in Cammage as the Taylor court did and instead uphold the conviction. And with respect to the sentencing issue, I'd like to briefly note that in light of the abolition of the void sentencing doctrine, the state does not any longer suggest that the consecutive sentence mandatory issue requires relief in the sense of a void sentence would be entered by the defense request for concurrent sentences. However, this defendant already has consecutive sentences. So the state is asking to uphold the judgment, not to vacate it and reimpose consecutive sentences. The fact is, though, is that the state can rely on an alternative argument. And I believe it was supported by the record, but I think the defendant points out that it's not like completely and affirmatively conclusively supported by the record that the defendants should have mandatory consecutive sentences because he was out on bail and he committed another crime. The prosecutor below believed that this sort of provision did not apply because the defendant did not have actual bail but was received a notice to appear. But because the statute applies to any form of pretrial release, he is subject to mandatory consecutive sentences. So if your honors believe that this consecutive sentencing issue was an abuse of discretion, the correct remedy would be remand for resentencing or at least for the trial court to determine whether consecutive sentences were mandatory because of the dates of when the actual crimes were committed. But of course, the state's position is actually this is not an abuse of discretion under the Stepin case. There were discretionary consecutive extra terms for possession of burglary tools given the light of this criminal record. And so this case is pretty closely on point to that in terms of defense lengthy criminal history supporting the finding that a consecutive term was necessary to protect the public from further crimes committed by the defendant. So for those reasons, this court should affirm and entertain any other questions. Otherwise, thank you, your honors. Thanks. Your rebuttal. Very briefly. The court in Comage found that the defendant did not conceal the evidence even though he attempted to conceal the evidence. And they found that because his attempt at concealing it did not materially impede any part of his own prosecution. The officer saw him throw it. So he attempted to conceal it. He still found him not guilty of obstructing justice. Again, in Baskerville, the court defines the furnishment of false information and what is required in the same way. If the two statutes are to be read harmoniously, which the court stated in Baskerville, they need to mean the same thing under both statutes. Further, the part that Ms. Brooks quoted regarding the quote from Comage where the court states that the legislature intended to criminalize behavior that actually interferes with administration of justice. Comage is five years old at this point. So if the legislature disagreed with the Supreme Court's summary of what the legislature's intent was, they've had five years to change the statute and make clear that that's not what they intended or that they intended to concealment that doesn't actually result in the evidence being concealed because the police have seen it. And then regarding our second argument, we maintain that they've waived and let it pass whether they've waived any argument that consecutive sentences were mandatory in this case. And we do believe that the state abused its discretion in extensing, say, to a discretionary extended term to protect the public. Discretionary consecutive sentences are supposed to be imposed sparingly. And again, the court had already imposed an extended term sentence. And then on top of that, ordered that the sentence in this case run consecutive to the previous sentence he was serving for theft. And Mr. Shays is 62 years old, and he has no history of any violent offense. All of his priors are for thefts and drug possession. And the public is not served by him serving six years for obstructing justice consecutive to the sentence that he was already serving for theft. So, Your Honors, don't reverse this conviction. We are asking that you find that the circuit court abuses discretion in imposing discretionary consecutive sentences. Thank you. Thank you. We'll take the matter under advisement and await the readiness of the next case.